UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHAWN JOSEPH,

         Petitioner,

  -against-

S. RACETTE, Superintendent,
Auburn Correctional Facility,

         Respondent.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-1693 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Shawn Joseph brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, attacking his state convictions of one count of first-degree assault, one count of second-degree criminal weapon possession, and two counts of second-degree robbery. He asserts two claims: (1) that his sentence to consecutive time was illegal because his crimes constituted a single act; and (2) that the verdict was against the weight of the evidence. For the reasons set forth below, Joseph's Petition is DENIED.

## I. BACKGROUND

### A. Facts[1]

On September 4, 2006, at approximately 2:00 a.m., Terrance Williams, Justin Davis, and Durell Grant, went to a party on East 55th Street between Farragut and Foster Avenues. (Def. App. Br. at 5.) Bryan Blondeville also attended this party. (Id.) There were between 100 and 300 people at the party, many of whom Williams, Grant, and Davis had never seen before. (Id.)

---

[1] The following facts are drawn from Joseph's description of the evidence the prosecution presented at trial as set forth in his brief to the Appellate Division on Direct Appeal (Dkt.10-2 Ex. B) (Citations to the trial transcript have been omitted).

1

At approximately 5:00 a.m., as the party ended, a dark-skinned black man with cornrows and a light-skinned black man approached Grant, Williams, and Davis. (Id. at 7.) The dark-skinned man complimented Grant on his dancing and then moved closer to Williams and asked if he had a problem. (Id. at 8.) Grant then stepped between Williams and the dark-skinned individual and told them to calm down. (Id.) The dark-skinned man refused to let Williams, Grant, and Davis leave unless "they gave up their property." (Id.) Then the light-skinned individual revealed a gun in his waistband, while the dark-skinned individual placed his hand inside his jacket pocket as if he had a gun. (Id.) Grant took off his earrings and tossed them at the dark-skinned man. (Id.) Grant claims that at that point he stopped a police car on East 55th Street and told the officer that he had been robbed at gun point, but the police officer drove off. (Id.) Williams gave the light-skinned man his ring and three dollars. (Id.) The light-skinned man returned the money. (Id.)[2]

After leaving the party, Williams, Grant, and Davis reconnected with Blondeville. (Id. at 9.) The four men then saw the two robbers and chased them down the street. (Id.) Davis, Grant, and Williams claimed they could see the robbers' faces, but Blondeville stated that he could not. (Id.) The four men lost sight of the robbers, who had turned the corner, and when they came back into view, the dark-skinned man fired a few shots in the air before firing at them. (Id. at 10.) The light-skinned man also fired shots. (Id.) Blondeville chased after the robbers, and after

---

[2] The People relied on the testimony of Grant (Trial Tr. (Dkt. 10-1) at 99-101); Davis (id. at 163-66), and Williams (id. at 26-27, 76). Joseph's description of the events, however, differs quite drastically. (Id. at 390-432.) Joseph stated that there were "[w]ords being exchanged" among a group of African American people and "people looked like they were ready to fight." (Id. at 390.) Joseph stated that "people basically were drunk. So, I tried to part them aside [and said], 'Is it really worth fighting over?'" (Id. at 391.) Joseph stated that Williams then tried to give him his property, and Joseph responded "I'm not part of this. I'm not trying to rob you. I'm just trying to clear everything up." (Id.) Joseph stated that he then left the party and went home, where his mother, bother, and sister were awake. (Id. at 394). Joseph heard gunshots and went to his window with his mother. (Id.) Joseph stated that at some point within 20 minutes of the shooting, he went to the store on his corner, and on his way home he saw Williams standing outside his house, talking to a police officer, and Williams looked him directly in the face. (Id. at 395).

he could not catch them, he returned and found that Davis had been shot in the neck. (Id. at 11.) The bullet severed his spinal cord, causing him permanent paraplegia from the waist down. (Id.)

Williams described the dark-skinned robber's hair as in braids or cornrows. (Id. at 12.) At approximately 5:00 p.m. that day, September 4, Detective Aremengol Viera arrested Joseph in front of his home, wearing different clothing than that described by Williams and Grant. (Id. at 12.) Neither one stated that the dark-skinned robber had a goatee or mustache (id.), but the arrest photograph indicates the Joseph had a mustache and goatee. (Res. App. Br. (Dkt. 10-2 Ex.C) at 13-14.) Detective Viera conducted lineups at 2:00 p.m. the following day, September 5, which were viewed by Grant and Williams, separately. (Id.) Both men identified Joseph in the lineup. (Id.) Viera testified that he put blue hats over the hair of the individuals in the lineup because they had different hairstyles. (Trial Tr. (Dkt.10-1) at 227-28, 244-45.) Williams did not recall that the people in the lineup had anything on their heads. (Id. at 50.) Grant recalled other individuals in the lineup also had cornrows, indicating that they were not wearing hats. (Id. at 137, 145.) Photographs of the lineup show that all the participants in the lineup had mustaches or goatees. (Id. at 259, 263)

### B. Trial Court Proceedings

Joseph was charged in New York Supreme Court, Kings County, with numerous counts of robbery in the first, second, and third degree; several counts of attempted robbery in the first, second and third degree; two counts of grand larceny; two counts of petit larceny; one count of attempted grand larceny; one count of attempted petit larceny; two counts of assault in the first, second, and third degree; two counts of criminal possession of a weapon in the second third and fourth degree. (Res. App. Br. at 2.)

Joseph's trial began on October 4, 2007. (Trial Tr. at 1.) Joseph was identified by Williams, Grant, and Davis at trial. (Def. App. Br. at 13.) However, Davis admitted that Joseph was the only dark-skinned young black man with cornrows sitting at the defense table. (Id. at 14.)

Joseph, the People, and the Court agreed to submit the following charges to the jury for consideration: two counts of second-degree robbery, two counts of third-degree robbery, one count of first-degree assault, one count of second-degree criminal possession of a weapon, and one count of third-degree criminal possession of a weapon. (Trial Tr. at 564-76.)

Joseph was convicted of one count of first-degree assault, one count of second-degree criminal possession of a weapon, and two counts of second-degree robbery. (Id. at 633-37.)

On November 13, 2007, at his sentencing, Joseph orally moved to set aside the verdict on the ground that identification was not proven beyond a reasonable doubt. (Nov. 13, 2007, Sentencing Tr. (Dkt.10-1) at 4.) The trial court denied Joseph's motion, stating that the "Court believes there was ample evidence to support this. Of course it was an identification case, and of course that can always be raised on appeal." (Id. at 5.)

The court sentenced Joseph to concurrent terms of ten years imprisonment on the second-degree robbery counts and the second-degree criminal weapon possession count, and to a consecutive term of fifteen years imprisonment on the first-degree assault count for an aggregated term of twenty-five years of imprisonment. (Id. at 11.) The court imposed five years of post-release supervision on each count. (Id.)

C.  **Direct Appeal**

Joseph appealed his conviction to the Appellate Division of New York State Supreme Court, Second Department. (Def. App. Br. at 2.) Joseph raised two claims on appeal: (1) that

the verdict was against the weight of the evidence and that the People failed to prove beyond a reasonable doubt that the appellant was one of the robbers (id. at 19-23); and (2) that the sentence imposed by the trial court was harsh and excessive (id. at 24-27).

On June 1, 2010, the Appellate Division unanimously rejected Joseph's claims and affirmed the convictions. People v. Joseph, 74 A.D.3d 840 (2d Dep't 2010). The court held that Joseph failed to preserve his challenge to legal sufficiency of identification evidence, which was made in Joseph's motion to set aside the verdict. Id. ("Raising a contention for the first time in such a motion does not preserve it for appellate review."). In addition, the court stated that viewing the evidence in the light most favorable to the prosecution, "there was legally sufficient evidence of the defendant's identification as one of the perpetrators." Id. at 840-41. Furthermore, the court's independent review found that the verdict of guilt was not against the weight of the evidence. Id. at 841; see N.Y. Crim. Proc. Law § 470.15(5). On the second claim, the court found that the sentence was not excessive and that Joseph's claim that his sentence improperly punished him for exercising his right to a trial was without merit. Joseph, 74 A.D.3d at 841.

Joseph sought leave to appeal to the New York Court of Appeals, which was denied on September 20, 2010. People v. Joseph, 15 N.Y.3d 853 (2010).[3]

### D.    Petition for Writ of Habeas Corpus

On December 13, 2011, Joseph submitted the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus ("Pet.") (Dkt.1).) Joseph asserts two claims: (1) that the sentence was harsh and excessive because his crimes constituted a single

---

[3] Joseph's conviction became final on December 20, 2010. The conviction becomes final 90 days after the New York court of Appeals has affirmed a conviction or denied leave to appeal. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001) ("the limitations period for state prisoners . . . begins to run only after the denial of certiorari or the expiration of time for seeking certiorari."). Therefore, the petition was timely.

act and therefore should run concurrently, not consecutively; and (2) that the verdict was against the weight of the evidence. (Id. at 4-6.) Assistant District Attorney Rhea A. Grob submitted an affidavit in opposition to the Petition. (Res. App. Br.)

## II. HABEAS CORPUS STANDARDS

Pursuant to 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion of state court remedies; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278

(1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present his federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like factual situations,
> (c) assertion of the claim in terms so particular as to call in mind a specific right protected by the Constitution, and
> (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

A petitioner is required to clearly present the federal claims raised in his § 2254 application to the state court in order for the petition to be considered exhausted. See Baldwin v. Reese, 541 U.S. 27 (2004) (claim of ineffective assistance of appellate counsel was unexhausted where it was not presented to the state courts as a federal claim). However, the state court's failure to mention the federal claim does not mean that the claim was not properly presented. See Dye v. Hofbauer, 546 U.S. 1, 3 (2005) ("Failure of a state appellate court to mention a federal claim does not mean the claim was not presented to it.").

Notably, *every* claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that "a district court [] dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982).

There is an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA—whereby a district court may *deny* an *entire* habeas petition on the merits notwithstanding a petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In other words, a court may deny, but not grant, "mixed petitions" on the merits. Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)); see Mobley v. Senkowski, No. 01-CV-6301 (JBW), 2003 WL 22952846 (E.D.N.Y. Nov. 12, 2003).

### B. Procedural Bar

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id.[4]

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [their] review of federal claims." Id. at 468.

---

[4] As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates: (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so*—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings"). A court's conclusion that a claim is procedurally barred rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can *no longer* be brought in state court, the court may consider the petitioner's remaining claims on the merits so long as *those* claims have been exhausted. See Turner, 262 F.3d at 122-23.

C. **AEDPA Deference**

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA. AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III. DISCUSSION

As a preliminary matter, Joseph's application to proceed in forma pauperis (Dkt. 4) is GRANTED.

The court must construe pro se submissions to "raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)); see also Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (holding that pro se litigants need to be protected from "inadvertent forfeiture of important rights because of their lack of legal training"). Therefore Joseph's Petition will be construed to raise the strongest possible arguments.

### A. Harsh and Excessive Sentence

Joseph claims that his sentence is "[h]arsh and excessive" and explains:

> It is unconstit[ut]ional to sentence me consecutive time for the same indictment where in 70.25 states a consec[u]tive sentences is only for two different crimes with victims. I believe my case was all one act which was a continuously act and all was a material element of each other. [sic throughout].

(Pet. at 4-5.) The court construes Joseph's petition to raise two claims: (1) that the sentence is unconstitutional under the Fifth Amendment's Double Jeopardy Clause; and (2) that the sentence is "harsh and excessive." See Triestman, 470 F.3d 471 (explaining the court should construe a pro se submission to raise all possible claims).

#### 1. Constitutional Argument: Double Jeopardy

Joseph claims that his sentence is unconstitutional. The court construes this to be a claim that Joseph's sentence violated his constitutional protection against double jeopardy under the Fifth Amendment. See Whalen v. United States, 445 U.S. 684 (1980) (Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense but also against multiple punishments for the same offense.). In New York courts, challenges to

11

a sentence on constitutional grounds may be brought in a motion to set aside sentence pursuant to N.Y. Crim. Proc. Law § 440.20, which states: "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law." N.Y. Crim. Proc. Law § 440.20. See Mabery v. Keane, 939 F. Supp. 193 (E.D.N.Y. Sept 9, 1995) (Denying habeas relief on the grounds that the petitioner could file a motion to set aside sentence pursuant to N.Y. Crim. Proc. Law § 440.20); see also People v. Mannino, 89 A.D.3d 1105 (2d Dep't 2011) (reviewing the appeal of a N.Y. Crim. Proc. Law § 440.20 motion challenging the imposition of consecutive sentence).

Joseph did not file a motion to set aside sentence pursuant to N.Y. Crim. Proc. Law § 440.20 and did not raise his double jeopardy claim on direct appeal. Thus, the claim is unexhausted, and the court must either dismiss Joseph's entire petition or deny the entire petition on the merits of each claim. 28 U.S.C. § 2254(b)(2). As explained below, the court denies this Petition on the merits.

Consecutive sentences violate the Double Jeopardy Clause "where the two offenses for which the defendant is punished . . . cannot survive the 'same-elements' test." Monstream v. Superintendent, Bedford Hills Corr. Facility, 486 F. App'x 164, 166 (2d Cir. 2012) (citing Blockburger v. United States, 284 U.S. 299 (1932)). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304; see United States v. Dixon, 509 U.S. 688 (1993). When an individual is being punished for two separately punishable crimes "there is no constitutionally cognizable right to concurrent, rather than consecutive,

sentences." Monstream, 486 F. App'x at 167 (quoting United States v. McLean, 287 F.3d 127, 136-37 (2d Cir. 2002)). In addition, the Supreme Court has stated that in relation to "sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366 (1983).

Robbery in the second degree and assault in the first degree are "two distinct statutory provisions." Blockburger, 284 U.S. at 304; see N.Y. Penal Law §§ 160.10, 120.10. A person is guilty of robbery in the second degree when he forcibly steals property and when:

> (1) He is aided by another person actually present; or
> (2) In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
> (a) Causes physical injury to any person who is not a participant in the crime; or
> (b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.

N.Y. Penal Law § 160.10. A person is guilty of assault in the first degree when:

> (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or
> (2) With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or
> (3) Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person; or
> 4) In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants.

N.Y. Penal Law § 120.10. For an individual to be found guilty of second-degree robbery, the government must prove two elements that are not present in the assault statute: the theft of property and, in the instant case, the display of a firearm. Compare N.Y. Penal Law § 160.10,

13

with N.Y. Penal Law § 120.10. In addition, second-degree assault contains an element—causing physical injury—that is a possible but not necessary element of second-degree robbery. Compare N.Y. Penal Law § 160.10, with N.Y. Penal Law § 120.10 Thus, under Blockburger the two offenses are distinct as there are separate facts required to prove the two crimes. See 284 U.S. at 304.

The act of robbery in the second degree was complete when Joseph, with an accomplice, displayed what appeared to be a firearm, in the course of stealing property from Williams and Grant at the party. (Def. App. Br. at 8.) Later in the evening, after leaving the party, Williams, Grant, Davis, and Blondeville chased Joseph and his accomplice down the street. (Id. at 10.) It was then that Joseph shot Davis in the neck, causing him permanent paraplegia from the waist down. (Id.) It was the act of shooting Davis and causing serious physical injury that fulfilled the elements of assault in the first degree. See N.Y. Penal Law § 120.10 ("With intent to cause serious physical injury to another person . . . by means of a deadly weapon or a dangerous instrument . . . or [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person."). In this case, there were two acts: the first, robbery, was completed during the party when Joseph took Grant's earring and Williams's ring; and the second act, assault, took place after the party, when Joseph shot Davis in the neck. (See Def. App. Br. at 7-11) Therefore, Joseph's consecutive sentence does not violate the Double Jeopardy Clause, as Joseph was convicted of two crimes with different elements, under two separate statutes, and the facts underlying each of the convictions were based on two separate acts. Blockburger, 284 U.S. at 304.

In addition, Joseph's sentence does not "prescrib[e] greater punishment than the legislature intended" because New York Law provides for consecutive sentences as long as the offenses were not "committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other . . . ." Missouri v. Hunter, 459 U.S. 359, 366 (1983); N.Y. Penal Law § 70.25(2). It is for the New York State courts to explicate this statute, and it is not a matter for a federal habeas court. See Carvajal v. Artus, 633 F.3d 95, 107 (2d Cir. 2011) ("[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. [S]tate courts are the ultimate expositors of state law.") (quoting Mannix v. Phillips, 619 F.3d 187, 199 (2d Cir. 2010)). According to the New York Court of Appeals, explicating N.Y. Penal Code § 70.25(2):

> [S]entences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other. . . . If it is neither, then the People have satisfied their obligation of showing that concurrent sentences are not required. If the statutory elements do overlap under either prong of the statute, the People may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts.

People v. Laureano, 87 N.Y.2d 640, 643 (1996) (citations omitted); see also People v. Brown, 80 N.Y.2d 361, 365 (1992) (noting that sentences may be imposed consecutively when the acts are "distinguishable by culpable mental state, nature and manner of use, time, place and victim").

The ability to punish the robbery and assault separately is within the legal scheme of New York Law, and the manner in which to construe the evidence is within the New York trial court's domain. Tunick v. Safir, 209 F.3d 67, 76 (2d Cir. 2000) (noting the question of how to construe the evidence is an issue for the trial court to decide). In this case the trial court found that the first act of robbery in the first degree occurred at the party and that the second act of assault did not occur as a result of or in flight from the robbery. (Sentencing Tr. at 4.) Based on

15

this determination it was within the New York Supreme Court's discretion to impose consecutive sentences in this case, and this court cannot reexamine the issue. See Carvajal, 633 F.3d at 107. Thus, the consecutive sentence does not violate the Double Jeopardy Clause because Joseph is being punished for two separate crimes.

Joseph's sentence also does not "prescrib[e] greater punishment than the legislature intended" under N.Y. Penal Law 70.02(3). Hunter, 459 U.S. at 366. The sentencing range for assault in the first degree is five to twenty-five years. N.Y. Penal Law § 70.02(3)(b). The sentencing range for robbery and weapon possession is three and one-half to fifteen years. N.Y. Penal Law § 70.02(3)(a). Joseph was sentenced to a total of twenty-five years, comprised of concurrent ten-year sentences for each of the robbery counts and the weapon possession count, and to a consecutive fifteen year sentence for the assault count. (Sentencing Tr. at 5.) Thus, Joseph's twenty-five year sentence is not is not unconstitutional, as it is not greater than the legislature dictates.

2. "Harsh" and "Excessive"

Joseph's claim that his sentence is harsh and excessive was denied on appeal, and therefore this claim has been exhausted. Joseph, 74 A.D.3d at 841; 28 U.S.C. § 2254(b)(1). While "harsh and excessive" is a valid state claim, see N.Y. Crim. Pro. § 450.30, this issue is not recognized in a federal habeas proceeding. A prisoner sentenced in state court within the range proscribed by law does not present any federal constitutional claim. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Izaguirre v. Lee, 856 F. Supp. 2d 551, 570-72 (E.D.N.Y. 2012) (finding that when a sentence is within the statutory range, it is not harsh, excessive, or retaliatory); Underwood v. Kelly, 692 F. Supp. 146, 152 (E.D.N.Y. 1988) ("When a sentence is within [its prescribed] range, a claim of excessive punishment does not present a constitutional

question necessary for habeas corpus reversal."). Because Joseph's sentence falls within the sentencing range of N.Y. Penal Law § 70.02(3), his harsh and excessive claim is not cognizable by this court on habeas review.

### B. Sufficiency of the Evidence

Joseph also claims that "[t]he verdict was against the weight of the evidence." (Pet. at 6.) Joseph contends, "There was not in trial to support I had a gun or stolen someone property none of the witness's story made sense and they keep on changing the statements [sic throughout]." (Id.) Joseph claims that he raised this same issue when he appealed from the judgment of conviction. (Id.) The court construes this claim to present a "weight of the evidence" claim and a "sufficiency of evidence" claim. See Triestman, 470 F.3d at 474 (explaining that the court must construe pro se submissions to "raise the strongest arguments that they suggest"). These claims were dismissed on appeal, and therefore have been exhausted. Joseph, 74 A.D.3d 840-41; 28 U.S.C. § 2254(b)(1).

#### 1. Weight of the Evidence

"A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5) which empowers New York State intermediate appellate court to make weight of the evidence determinations." Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y 2006) (quoting Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). In making a "weight of the evidence" argument, Joseph has not asserted a federal claim as required by 28 U.S.C. § 2254(a). Instead, he has raised an error of state law, for which habeas review is not available. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law).

## 2. Sufficiency of the Evidence

The court also construes Joseph's Petition to present a claim challenging the "sufficiency of the evidence." According to AEDPA, a writ of habeas corpus is only "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 133 S. Ct. 696, 708, (2013) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)); see Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984) (noting that the trier of fact in the state court weighs the evidence, determines credibility, and draws inferences from facts.). The jury's decision must be respected if any fair-minded jurist could "possibly" find Joseph guilty. Oritz v. Bradt, No. 13-CV-5420 (BMC), 2013 WL 5775695, at *5 (E.D.N.Y Oct. 25, 2013) (A writ of habeas corpus has "arguably the narrowest standard of judicial review in the law.") (citing Harrington, 131 S. Ct. at 786).

The court denies Joseph's challenge to the sufficiency of the evidence. This case presented the trial court with a question of fact as to the identity and guilt of the criminal. (Trial Tr. at 564-76.) There were inconsistencies in the victims' descriptions of Joseph and the events that took place that night. See supra at 2-3. For example, there was conflicting evidence as to the hairstyle of the robbers, the manner in which the lineup was conducted, and whether the robber had facial hair. Id. However, Williams, Grant, and Davis all testified as to the fact that Joseph robbed Williams and Grant after indicating that he had a gun. Id. In addition, Williams, Grant, Davis, and Blondeville testified that Joseph later fired several shots, one of which hit Davis and rendering him a paraplegic. Id. The jury weighed the evidence and found there to be sufficient evidence to convict Joseph of second-degree robbery, first-degree assault, and second-degree criminal weapon possession. (Trial Tr. at 633-37.) The inconsistencies within the testimony would not have prevented a rational jury from finding that Joseph committed the acts

for which he has been convicted. Indeed, the question of the robbers' identity was precisely the question of fact the jury was required to resolve, and there was enough evidence presented at trial for a jury to rationally identify Joseph as one of the perpetrators. Therefore Joseph's claim that there was a lack of sufficient evidence to convict him is denied. See 28 U.S.C. § 2254(e)(2)(B). ("The facts underlying the claim would [have needed to] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense" in order to accept this claim.).

## IV. CONCLUSION

Joseph's application to proceed in forma pauperis is GRANTED. However, for the reasons set forth above, Joseph's Petition for Writ of Habeas Corpus is DENIED. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Dated: Brooklyn, New York
      April 11, 2014

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge